UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SILVESTRE COTA, | ) | CIVIL ACTION NO. 4:21-CV-672 |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
|     Defendant | ) | |

MEMORANDUM OPINION

I.    INTRODUCTION

Plaintiff Silvestre Cota, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED.

II.  BACKGROUND & PROCEDURAL HISTORY

In late February 2019, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 21; Doc. 15-2, p. 22). In these applications, Plaintiff alleged he became disabled on January 1, 2017, when he was forty-eight years old, due to the following conditions: COPD 3rd stage; severe asthma; PAVM diffused; high blood pressure; high cholesterol; epilepsy; seizures; severe migraines; PTSD; traumatic brain injury; adrenal gland tumor; possible kidney cancer, stage unknown. (Admin. Tr. 283; Doc. 15-6, p. 8). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, walk, sit kneel, talk, hear, climb stairs, remember things, complete tasks, concentrate, understand, and follow instructions. (Admin. Tr. 307; Doc. 15-6, p. 31). Plaintiff has at least a high school education and is able to communicate in English.

(Admin. Tr. 33; Doc. 15-2, p. 34). Before the onset of his impairments, Plaintiff worked as a chef or chef supervisor. (*Id.*).

On May 22, 2019, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 21; Doc. 15-2, p. 22). On August 20, 2019, Plaintiff's applications were denied on reconsideration. *Id.* On September 11, 2019, Plaintiff requested an administrative hearing. *Id*.

On January 13, 2020, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Michelle Wolfe (the "ALJ"). *Id*. On March 5, 2020, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 35; Doc. 15-2, p. 36). On March 31, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 245; Doc. 15-4, p. 73).

On February 8, 2021, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 15-2, p. 2).

On April 12, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court award

benefits, or in the alternative, remand this matter for a new administrative hearing. *Id*.

On August 24, 2021, the Commissioner filed an Answer. (Doc. 14). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 15).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 19), and Plaintiff's Reply (Doc. 22) have been filed. This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

    A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552,

565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application

of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

  B.  STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement

---

[2] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on March 5, 2020.

age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his

decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

    A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In her March 2020 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2020. (Admin. Tr. 24; Doc. 15-2, p. 25). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between January 1, 2017 (Plaintiff's alleged onset date) and March 5, 2020 (the date the ALJ decision was issued) (the "relevant period"). (Admin. Tr. 24; Doc. 15-2, p. 25).[3] At step two, the ALJ found that,

---

[3] In her decision, the ALJ discussed prior applications filed by Plaintiff, and the effect of those applications on the March 2020 ALJ decision as follows:

> the claimant had prior applications. By letter dated February 4, 2019, the claimant, through his representative asked to withdraw the prior request for hearing. As such, the record contains an Order of Dismissal by Administrative Law Judge Richard Zack, dated February 12, 2019, which indicates that the prior determination of April 24, 2018 remained in effect. The claimant filed the current applications within 12 months of the date of the initial determination on the prior applications (20 CFR 404.988 et seq. and 416.1488 et seq.)m and is alleging an onset date within the prior determination period. The determinations on the claimant's prior Title II and Title XVI applications are NOT being reopened, as the claimant had an opportunity to have a hearing on his prior request and chose, with the

during the relevant period, Plaintiff had the following medically determinable severe impairments: asthma; arteriovenous malformation status-post embolism; obesity; diabetes mellitus; neuropathy; major depressive disorder; panic disorder; chromic alcohol use; and marijuana use. (Admin. Tr. 24; Doc. 15-2, p. 25). The ALJ also identified the following medically determinable non-severe impairments: elbow contusion; bronchospasm; URI; thermal burn; plantar fasciitis; obstructive sleep apnea; hypoxia; dermatofibroma; prurigo nodule; skin lesion; hypertension; drug-induced erectile dysfunction; allergic rhinitis; disorder of refraction and accommodation; hemorrhoids; cervicalgia; right shoulder AC and SC arthritis; status-post inguinal hernia repair; adrenal nodule/adrenal incidentaloma; sensorineural hearing loss; cellulitis of left lower extremity; migraine headaches; and GERD. (Admin. Tr. 25; Doc. 15-2, p. 26). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

---

advice of his representative, to withdraw this request knowing the ramifications of that withdrawal. For purposes of the decision, the undersigned review all the evidence within the record however, the prior determination dated April 24, 2018 still remains in effect, and the decision herein continues the review through the date of this decision.

(Admin. Tr. 21; Doc. 15-2, p. 22).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) subject to the following additional limitations:

> The claimant can have a sit/stand option with intervals being maximum of 2 hours each time for sitting, half hour for standing, and walking limited to intervals of 15 minutes each time. The claimant is limited to occasional balancing, stooping, crouching, crawling, kneeling, and climbing, but never climbing on ladders, ropes, scaffolds. The claimant is limited to occasional pushing/pulling with the lower extremities to include the use of foot controls. The claimant is limited to occasional exposure to temperature extremes of cold and heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, vibrations, and hazards including moving machinery and unprotected heights. The claimant can do simple routine tasks, but no complex tasks, with occasional interaction with the public, coworkers, and supervisors.

(Admin. Tr. 28-29; Doc. 15-2, pp. 29-30).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 33; Doc. 15-2, p. 34-35). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 33-34; Doc. 15-2, pp. 34-35). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations:

folder, DOT #789.687-066; sorter, DOT #222.687-014; price marker, DOT #209.587-034. *Id*.

Plaintiff raised the following arguments in his Statement of Errors:

(1)   The RFC formulated by the ALJ does not allow for light work;

(2)   The ALJ improperly formulated an RFC without the benefit of a medical opinion;

(3)   The ALJ failed to consider the side effects medication has on the Plaintiff;

(4)   The appointment of Andrew Saul as a single Commissioner of SSA is removable only for cause and served a longer term than that of the President violates separation of powers. Accordingly the Decision in this case, by an ALJ and Appeals Council Judges who derived their authority from Mr. Saul, is Constitutionally defective.

(Doc. 16, p. 7).

While not listed in his Statement of Errors, Plaintiff also contends that the ALJ's treatment of Dr. Dometita's opinions were not based on substantial evidence. (*Id.*). However, to resolve this case, I only need to discuss this last alleged error.

B.   WHETHER THE ERRED IN HER TREATMENT OF DR. DOMETITA'S OPINIONS

Plaintiff contends that the ALJ erred in her reasoning when she deemed two opinions from Dr. Dometita to be not persuasive. (Doc. 16, p. 10). Plaintiff argues that the ALJ erred in her supportability analysis because she incorrectly described

Dr. Dometita's opinions as inconsistent with each other, and with his accompanying cover letter. (*Id.*). The Commissioner argues that the ALJ did not err, as Dr. Dometita's opinions were not consistent with the evidence. (Doc. 19, p. 37). I agree with Plaintiff; the ALJ erred. In this section, I will explain the standards used for analyzing medical opinion evidence, why the ALJ erred in his analysis of Dr. Domettia's opinion, and why this is not harmless error.

            1.      Standards for Analyzing Medical Opinion Evidence

An ALJ's consideration of competing medical opinions is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a

medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

As stated, the two most important factors are supportability and consistency. The supportability factor contemplates that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). This contrasts with the consistency factor, which requires that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(2). This legalese can be simplified as follows:

> [S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record. In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record.

*Cook v. Comm'r of Soc. Sec.*, No. 20-cv-1197, 2021 WL 1565832, at *6 (M.D. Fla. Apr. 6, 2021).

        2.        Did the ALJ Properly Consider Dr. Dometita's Opinions?

Dr. Dometita provided two medical opinions on Plaintiff's physical limitations. Both opinions are near identical, as they both opine, *inter alia*, that Plaintiff could stand/walk for less than 2 hours and sit for about 4 hours. Additionally, both opinions contained some sort of lift/carry limitation. In the first opinion, Dr. Dometita thought Plaintiff could frequently lift and carry up to 10 pound items, rarely lift and carry 20 pound items, and never lift and carry 50 pound items. (Admin. Tr. 1206; Doc. 15-7, p. 819). In his second opinion, Dr. Dometita did not opine on whether Plaintiff could frequently lift or carry items up to 10 pounds. (Admin. Tr. 1211; Doc. 15-7, p. 824). However, like his first opinion, he believed Plaintiff could rarely lift and carry 20 pound items, and never lift and carry 50 pound items. (*Id.*).

Additionally, Dr. Dometita enclosed a cover letter to his first opinion, where he described his treatment relationship with Plaintiff, as well as an opinion that

"[p]rolonged standing and walking lengthy distances can also prove to be difficult . . . ." (Admin. Tr. 1203; Doc. 15-7, p. 816).

The ALJ ultimately rejected these opinions. She explained:

The undersigned considered the medical source statement provided by the claimant's primary care provider, Dr. Dometita, who indicated that the claimant could sit about 4 hours, stand/walk less than 2 hours, and lift/carry at a sedentary level, but on another form Dr. Dometita indicated a light lift/carry limitation (Exhibits B14F; B15F). Dr. Dometita also provided a letter in which the limitations cited in the letter do not necessarily preclude all work (Exhibit B13F), whereas his check-the-box medical source statement did. The undersigned does not find this medical source statement to be persuasive because it is not even consistent with Dr. Dometita's own letter that only noted prolonged standing and walking lengthy distances can prove to be difficult. This work preclusive opinion is also not supported by Dr. Dometita's own examination findings discussed above that remained within normal limits. A post-hearing letter was also provided by Dr. Dometita, but such did not contain any functional opinions (Exhibit B17F).

The ALJ discounted Dr. Dometita's opinions because she believed that they are inconsistent with one another, and with his cover letter. This decision is not supported by substantial evidence for three reasons.

First, ALJ attacks the two opinions by indicating that Dr. Dometita's opinions are inconsistent as to the presence of a lift/carry limitation. That is an erroneous conclusion. In the first opinion, Dr. Dometita thought Plaintiff could frequently lift and carry up to 10 pound items, rarely lift and carry 20 pound items, and never lift and carry 50 pound items. (Admin. Tr. 1206; Doc. 15-7, p. 819). In

his second opinion, Dr. Dometita did not opine on whether Plaintiff could frequently lift or carry items up to 10 pounds. However, like his first opinion, he believed Plaintiff could rarely carry and lift 20 pound items, and never lift and carry 50 pound items. (Admin. Tr. 1211; Doc. 15-7, p. 824). Both opinions clearly indicate a lift/carry limitation: Plaintiff can rarely lift 20 pound items and never lift 50 pound items. So, to any extent the ALJ relied on this to form her decision, it is an error.

Second, the ALJ attacks Dr. Dometita's opinions because it is allegedly not consistent with his cover letter. I disagree. Dr. Dometita's opined that Plaintiff could only stand/walk for less than 2 hours in an 8 hour workday. (Admin. Tr. 1205; Doc. 15-7, p. 818); (Admin. Tr. 1211; Doc. 15-7, p. 823). The ALJ apparently believes that this opinion is somehow inconstant with Dr. Dometita's letter opining that "prolonged standing and walking lengthy distances can prove to be difficult [for Plaintiff] . . . ." (Admin. Tr. 1203l Doc. 15-7, p. 816). I fail to see how this letter contradicts the medical opinion, and they appear consistent with each other.

Third, the ALJ did not explain the consistency of Dr. Dometita's opinion relative to the evidence in the record. The ALJ only touches on the supportability of the opinion, which describes the "extent to which a medical source has articulated support for the medical source's own opinion . . . ." *Cook*, 2021 WL

1565832, at *6. An ALJ must analyze both consistency and supportability, and an ALJ's failure to thoroughly do so will often lead to remand. *See, e.g., Andrews v. Kijakazi*, No. 20-cv-1878, 2022 WL 617118, at *21-22 (M.D. Pa. Mar. 2, 2022) (remanding case where the ALJ "tersely addressed both the supportability and consistency of [a provider's] opinion" which makes "the ALJ's rationale . . . too opaque to permit judicial review."); *Brownsberger v. Kijakazi*, No. 20-cv-1426, 2022 WL 178819, at *15-19 (M.D. Pa. Jan. 18, 2022) (remanding case because the ALJ did not "provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors."). In this case, the ALJ only discussed Dr. Dometita's opinions relative to his own records, but not with other evidence in the record. This is an error.

So, in sum, the ALJ based her supportability decision on erroneous observations and did not discuss the consistency of the medical opinion. Supportability and consistency are the two most important factors in an ALJ's analysis of a medical opinion and the failure to properly discuss both factors is an error. Thus, the ALJ's treatment of Dr. Dometta's opinions is not supported by substantial evidence.

### 3. This is Not Harmless Error

I cannot say this error is harmless. If the ALJ fully analyzes Dr. Dometita's opinions, she might find his opinions persuasive. Critically, if the ALJ accepts Dr. Dometita's opinions, Plaintiff would likely be limited to sedentary work. SSR 83-10, 1983 WL 31251 at *5 (sedentary work is limited to no more than 2 hours of standing or walking). And because Plaintiff turned 50 during the relevant period,[4] has no transferable skills to any sedentary position, (Admin. Tr. 76; Doc. 15-2, p. 77), has a high school education, (Admin. Tr. 33; Doc. 15-2, p. 34), and cannot do his past work, (Admin. Tr. 71; Doc. 15-2, p. 72), he will be found disabled pursuant to regulation. 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 1, Rule 201.12. Thus, this error is not harmless.

[The next page contains the Conclusion]

---

[4] Plaintiff's fiftieth birthday was on March 6, 2018. (Admin. Tr. 108; Doc. 15-3, p. 20) (listing Plaintiff's birthday as March 6, 1968). The relevant period is from January 1, 2017 to March 5, 2020. "Social Security regulations set forth an occupational grid for sedentary work that requires a disability finding for individuals closely approaching advanced age (50-54 years old) who are high school graduates without transferable work skills, whereas younger individuals with identical education levels and skills would be found not disabled." *Creasy v. Barnhart*, 30 F. App'x 620, 623 n.2 (7th Cir. 2002).

V.   CONCLUSION

Accordingly, Plaintiff's request to vacate and remand this case back to the Commissioner will be granted as follows:

(1) The final decision of the Commissioner will be VACATED.

(2) This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3) Final judgment will be issued in favor of Silvestre Cota.

(4) An appropriate order will be issued.

Date: August 25, 2022                          BY THE COURT

                                               *s/William I. Arbuckle*
                                               William I. Arbuckle
                                               U.S. Magistrate Judge